## A09A1254. RECORD TOWN, INC. v. SUGARLOAF MILLS LIMITED PARTNERSHIP OF GEORGIA.

(687 SE2d 640)

BARNES, Judge.

After a bench trial, Record Town, Inc., d/b/a Sam Goody ("Sam Goody"), the tenant, appeals the grant of a writ of dispossession and a money judgment in favor of Sugarloaf Mills Limited Partnership of Georgia, d/b/a Discover Mills ("Discover Mills"), its landlord, in a dispute over the amount of rent owed under its lease. Among other errors, Sam Goody contends the trial court erred by finding it was obligated under the parties' lease amendment to make additional monthly payments for utilities calculated by square footage. We agree and reverse the trial court.

The record shows that after extended correspondence between the parties about whether Sam Goody was required under a lease amendment to pay an additional monthly sum for utilities, Discover Mills initiated a dispossessory proceeding against Sam Goody. Sam Goody answered, denying that it owed the additional money and counterclaimed to recover payments for utilities that it claimed were paid mistakenly. Following a bench trial, the court ruled in favor of Discover Mills.

1. We must note initially that "construction of a contract is a question of law for the court." OCGA § 13-2-1. Thus, "[t]he construction of the provisions of this lease, as with other contracts, is generally one for the court to determine as a matter of law," *Peachtree on Peachtree Investors, Ltd. v. Reed Drug Co.*, 251 Ga. 692, 694 (1) (308 SE2d 825) (1983), and when a question of law is at issue, we owe no deference to the trial court's ruling and apply the "plain legal error" standard of review. *Glover v. Ware*, 236 Ga. App. 40, 45 (3) (510 SE2d 895) (1999). It is not apparent from the record why the trial court conducted a bench trial without first determining whether the issue could be decided under the usual rules of contract construction, and the court made no finding that the provisions of the lease under consideration were ambiguous. Regardless, as the trial court's construction of the lease was ultimately a ruling on a matter of law, we will review the decision under the plain legal error standard.

2. Although the judgment and writ of possession do not explain the bases for the trial court's ruling, at the conclusion of the bench trial the court noted that the first lease amendment "excluded the minimum rent, the percentage rent, and fund contributions, except for utilities provided by and paid to a third party provider." The court then found that it did not "make sense for the parties . . . to specifically address obligations payable by the tenant to third parties. They were talking about changing their obligations between themselves." It reviewed the second amendment to the lease and

YALE LAW LIBRARY

determined that it specifically excluded only "extra items added to rent that really apply to the facility as a whole . . . which is different from utilities applying to a specific premises being used, the square footage being used by the tenant." The trial court concluded that utilities were thus due under the amended lease and directed Discover Mills to draw up an order.

While the trial court found that "it did not make sense" for the parties to have addressed obligations of the tenant payable to third parties in the first lease amendment, parties are allowed to agree to whatever provisions in a contract they choose unless the provisions are prohibited by statute or public policy. *Simmons v. Select Ins. Co.*, 183 Ga. App. 128, 129 (1) (358 SE2d 288) (1987). The first rule of contract construction is to determine the parties' intent, and if the language is clear the contract "shall be enforced." *Homelife Communities Group v. Rosebud Park, LLC*, 280 Ga. App. 120, 122 (633 SE2d 423) (2006). In fact, no construction is "even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." Id. Thus the trial court erred in its method of interpreting the contract.

3. Sam Goody contends the trial court erred in finding that the per-square-foot utility payments were due under the plain language of the second amendment to the lease, which applies to the time period at issue.

> The construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. [Cit.]

*Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999). Thus we first consider whether the contract language is ambiguous.

The original ten-year lease, which began in February 2002, provided that the tenant could connect to and use utilities such as electricity, water, gas, and telephone in accordance with the landlord's design and safety criteria, and was responsible for the utilities used. The landlord had the option to supply the utilities, and if it did

so, the tenant agreed to pay as additional rent a per-square-foot charge based on estimated usage.

The first amendment to the lease, effective January 2004, established a two-year "Rent Relief Period." It provided that "[n]otwithstanding anything to the contrary" contained in the original lease, the tenant would pay monthly rent of either a fixed amount or a percentage of gross sales, whichever was greater, "in lieu of the Scheduled Minimum Rent, Percentage Rent and Tenant's share of Common Area Maintenance Expenses and Tenant's Fund Contribution provided for in the Lease (excepting utilities provided by and paid to a third party provider)." The tenant remained responsible for late charges and its proportional share of taxes.

The second lease amendment applied from April 2006 through the new expiration date of January 2008, and was entered into because of Sam Goody's Chapter 11 bankruptcy proceedings. The rent clause at issue reads as follows:

Tenant shall pay Landlord as *total rent* for the Premises (the "**Gross Rent**") as follows:

*Notwithstanding anything to the contrary in the Lease*, from April 1, 2006 through the lease expiration date ("**Modified Rent Period**"), Tenant shall pay (1) Minimum Rent equal to Sixty Five Thousand Dollars ($65,000.00) per year ("**Annual Rent**"), payable in equal monthly installments of Five Thousand Four Hundred Sixteen and 67/100ths Dollars ($5,416.67) per month ("**Monthly Rent**"), and (ii) eight percent (8%) of Tenant's annual Gross Sales (as defined in Section 2.2 of the Lease) during any Lease Year or Partial Lease Year which exceed the Annual Rent during the Modified Rent Period ("**Percentage Rent**").

. . .

In the event Gross Rent Payments are not received by Landlord when they are due, Tenant shall be responsible for the payment of Late Charges as provided for in the Lease.

During the Modified Rent Period, except for Gross Rent, *Tenant shall not be obligated to pay any other rent charges pursuant to the Lease* (provided that this paragraph shall not apply to additional rent charges such as late fees), including, but not limited to Tenant's proportionate share of Common Area Maintenance Expenses pursuant to Article 5.2 of the Lease, Tenant's proportionate share of Taxes pursuant to Article 7 of the Lease, Tenant's contribution to

YALE LAW LIBRARY

> the Promotion Fund pursuant to Article[s] 13.1 and 13.2 of the Lease, and Tenant's obligation for Advertising pursuant to Article 13.3 of the Lease.

(Bold emphasis in original; other emphasis supplied.)

Sam Goody contends the list of exceptions in the last paragraph is a nonexclusive list of specific rent obligations that were not due under the amended lease. It argues that, because the terms of the amended lease applied notwithstanding any contrary provisions in the original lease, it did not owe an additional per-square-foot utility charge in addition to the Gross Rent. Discover Mills, however, contends the trial court did not err because Article 19 of the original lease, titled "Utilities," provides that Sam Goody "agrees to pay as additional rent a per square foot charge based upon [Sam Goody's] estimated usage" of utilities.

"It is the function of the court to construe the contract as written and not to make a new contract for the parties." (Citation and punctuation omitted.) *Ga. Magnetic Imaging v. Greene County Hosp. Auth.*, 219 Ga. App. 502, 504 (1) (466 SE2d 41) (1995). Because the words in this contract are plain and obvious, they must be given their literal meaning, *United States Fire Ins. Co. v. Capital Ford &c.*, 257 Ga. 77, 79 (1) (355 SE2d 428) (1987), and unambiguous terms are taken in their plain, ordinary and popular sense as supplied by dictionaries. *Henderson v. Henderson*, 152 Ga. App. 846, 847 (1) (264 SE2d 299) (1979). See also OCGA § 13-2-2 (2) ("Words generally bear their usual and common signification. . . .").

Thus, because " 'notwithstanding' means 'without prevention or obstruction from' or 'in spite of,' " *Shearin v. Wayne Davis & Co., P.C.*, 281 Ga. 385, 386 (637 SE2d 679) (2006), the statement in this lease amendment "[n]otwithstanding anything to the contrary in the Lease" means that other provisions in the original lease cannot alter the terms of this amendment. The amended lease also provides that "[i]n the event of any conflict between the Original Lease and this Amendment, this Amendment shall prevail." Consequently, even though the original lease provided that all charges "of any kind or nature," payable in addition to the minimum and percentage rents are defined as "additional rent," and that if the landlord elects to supply utilities, the tenant will pay additional rent as a per-square-foot charge, the "notwithstanding" provision in the amendment means that these requirements from the original lease do not alter the terms of the second amendment.

As the late charge requirement is imposed by the amendment specifically, Sam Goody was obligated to pay any late charges it might incur. Stating that Sam Goody was obligated to pay "additional rent charges such as late fees," however, does not impose a

requirement to pay for other charges because no other charges are specified and again the "notwithstanding" provision in that section precludes any other charges based on the original lease.

Additionally, the per-square-foot charge for utilities is not an additional rent charge "such as" a late charge. "Such as" means "for example, of the stated or implied kind of degree; similar; like." The American Heritage Dictionary, Second College Edition, p. 1215. "Such" is defined in Black's Law Dictionary, Sixth Edition, p. 1432, as: "Of that kind, having particular quality or character specified. Identical with, being of the same as what has been mentioned. Alike, similar, of the like kind." A late charge under the lease is due if the tenant does not pay the rent on time and is equal to the lesser of $50 or "three percent per month of the total receivable balance of Tenant outstanding." The utility charge under the original lease was not dependent upon any deficiency by the tenant and was not based upon actual utility usage but on "a per square foot charge based on [Sam Goody's] estimated usage" for utilities.

Thus, the utility charge is more like the specifically excepted other charges for a "Tenant's proportionate share of Common Area Maintenance Expenses" and taxes under the original lease, which are also based upon the tenant's "gross leased and occupied floor area in the Shopping Center." Indeed, the lease provides that "whenever Tenant is obligated to pay its 'proportion share' of a cost, expense, or Taxes (as hereinafter defined) such share shall be based on" square footage. Thus, the charge for utilities is ejusdem generis, i.e., of the same kind or class as the specifically excepted charges. *Dept. of Transp. v. Montgomery Tank Lines*, 276 Ga. 105, 106 (1), n. 5 (575 SE2d 487) (2003). Under the rule of ejusdem generis, the words "including but not limited to" ordinarily should be construed as referring to charges of the same kind as those specially named.

Therefore, the trial court erred by construing the lease amendment to require Sam Goody to pay additional monthly fees for utilities.

4. Because we have found that the trial court erred by construing the contract to include payments for utilities, Sam Goody's other enumerations of error are moot.

Accordingly, the judgment of the trial court and the writ of possession are reversed and the trial court is directed to enter an involuntary dismissal of the dispossessory proceedings and to address the claims presented in Sam Goody's counterclaim.

*Judgment reversed with direction. Miller, C. J., and Andrews, P. J., concur.*

DECIDED DECEMBER 1, 2009.

*Carol V. Clark*, for appellant.
*Arnall, Golden & Gregory, James A. Gober*, for appellee.