**THIRD DIVISION**
**RICKMAN,**
**GOBEIL and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 6, 2019**

# In the Court of Appeals of Georgia

A18A1519. SUNTRUST BANK v. BICKERSTAFF

GOBEIL, Judge.

In 2010, Jeff Bickerstaff, Jr.,[1] a customer of SunTrust Bank ("SunTrust"), filed a complaint against SunTrust on behalf of himself and all others similarly situated asserting that SunTrust's overdraft fees constitute unlawful interest charges and raising claims for violation of Georgia's civil and criminal usury laws (OCGA §§ 7-4-2 and 7-4-18, respectively), money had and received, and conversion. This is the third appearance of this case before this Court. In the instant appeal, SunTrust challenges the Superior Court of Fulton County's order holding SunTrust's class-action litigation waiver unconscionable and granting Bickerstaff's motion for class

---

[1] Jeff Bickerstaff passed away during the ongoing litigation, and the Executor of his Estate, Ellen Bickerstaff, was substituted as the named plaintiff.

certification, pursuant to OCGA § 9-11-23. SunTrust argues that the trial court erred in (1) finding the class-action waiver unconscionable, and (2) granting class certification. For the reasons that follow, we affirm.

*Background and Procedural History*

Like many banking institutions, SunTrust provides an automated overdraft program that allows an account holder's ATM or debit card transaction to be approved even if the approved amount exceeds the account holder's available balance. In other words, the customer has insufficient funds to cover the transaction and SunTrust advances the customer the necessary funds to cover the transaction, but, in return, charges the customer a flat fee per overdraft transaction. During the relevant time period, SunTrust charged a flat overdraft fee of $32 or $36 per overdraft transaction. In the complaint, Bickerstaff alleged that, on multiple occasions, SunTrust "advance[d] money to Plaintiff in amounts less than $3,000 and collected Overdraft Fees from Plaintiff in connection with each such advance." He maintained that SunTrust's overdraft fees in fact constitute interest charged by SunTrust for the use of the money SunTrust advanced/loaned account holders to cover overdrafts on their accounts, and that the rate of interest grossly exceeded the rate allowed under Georgia's usury laws.

2

The record reveals that, in 2009, when Bickerstaff opened his account with SunTrust, he, like all SunTrust customers, signed a document acknowledging receipt of SunTrust's Rules and Regulations for Deposit Accounts – an approximately 40-page, single-spaced, fine-print booklet ("the Rules and Regulations") – and agreeing to be bound by the Rules and Regulations. In relevant part, in an introductory section preceding the table of contents, the Rules and Regulations included a provision that "[a] determination that any part of this agreement is invalid or unenforceable will not affect the remainder of this agreement." On page 22 of the booklet, the Rules and Regulations included a mandatory arbitration provision, which provided as follows:

DISPUTE RESOLUTION

READ THIS PROVISION CAREFULLY AS IT WILL HAVE A SUBSTANTIAL IMPACT ON HOW LEGAL CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED. For a Claim subject to arbitration, neither the Depositor nor the Bank will have the right to: (1) have a court or a jury decide the Claim; (2) engage in information-gathering (discovery) to the same extent as in court; (3) participate in a class action in court or in arbitration; or (4) join or consolidate a Claim with claims of any other person. The right to appeal is more limited in arbitration than in court and other rights in court may be unavailable or limited in arbitration.

3

ARBITRATION. Notwithstanding any other provision in these rules and regulations, if either Depositor or the Bank has any unresolvable dispute, controversy or claim . . . whether founded in contract, tort, statutory or common law, concerning, arising out of or relating to the Account or these rules and regulations . . . upon the demand of either party, it will be resolved by individual (not class or class-wide) binding arbitration[.]

Additionally, on page 24, the Rules and Regulations contained a jury trial waiver provision, which provided as follows:

**JURY TRIAL WAIVER.** FOR ANY MATTERS NOT SUBMITTED TO ARBITRATION, DEPOSITOR AND BANK HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF THESE RULES AND REGULATIONS, RELATING TO THE ACCOUNT, OR ANY OTHER DISPUTE OR CONTROVERSY BETWEEN YOU AND US. *FURTHER, DEPOSITOR AND BANK HEREBY AGREE THAT ANY LITIGATION WILL PROCEED ON AN INDIVIDUAL BASIS AND WILL NOT PROCEED AS PART OF A CLASS ACTION.*

(emphasis supplied). The final sentence of the above paragraph is at issue in this case and is hereinafter referred to as the "class-action waiver."

After Bickerstaff filed the underlying complaint, SunTrust revised its Rules and Regulations and provided customers with the ability to opt out of arbitration. SunTrust moved to compel arbitration in the underlying case, which the trial court denied, finding that Bickerstaff effectively exercised his right to opt out of arbitration by filing the instant complaint.[2]

Subsequently, SunTrust entered into an agreed upon stipulation related to class certification, stipulating to the following:

1. SunTrust maintains documents and/or data sufficient to identify the following information related to individual consumer deposit accounts in which an ATM card or debit card transaction caused an overdraft of the account ("Overdraft") during the putative class period of July 12, 2006, to July 2010 ("Class Period") and for which an overdraft fee and/or an extended overdraft fee was charged to the account (together, "Overdraft Fee"):

a. the individual customer's name, account number, and mailing address;

---

[2] Suntrust filed an application for interlocutory appeal of the order denying its motion to compel arbitration, which we granted in Case. No. A12A2547, and Bickerstaff cross-appealed in Case No. A12A2548. However, we later dismissed both appeals as having been improvidently granted.

b. the date each Overdraft was incurred and the amount of the Overdraft;

c. the date and amount of any Overdraft Fee that was charged to the account;

d. the dates that the account which had an Overdraft subsequently had any transaction that affected the account balance, including, but not limited to, any deposits, credits, or debits and the amount, nature, and posting date of such transactions;

e. the date that an account which had an Overdraft subsequently had a positive balance, if it did ever have such a positive balance; and

f. the date and amount of any adjustments, credits, or refunds of any Overdraft Fee incurred on the account.

2. With a sufficient amount of time and expense, it is possible to obtain and process the documents and/or data sufficient to show the information listed in paragraph 1 above. SunTrust will not argue that class certification should be denied on the basis that it would be unduly burdensome, difficult, or impossible to obtain and produce the documents and data referenced in paragraph 1 above. SunTrust reserves and retains all rights to object to Plaintiff's request for production of documents.

3. The number of individuals who maintain consumer deposit accounts with Georgia mailing addresses which have been assessed an Overdraft Fee caused by an Overdraft during the Class Period exceeds 1,000.

4. SunTrust will not argue that class certification should be denied on the basis that the systems or processes used to record an Overdraft and assess an Overdraft Fee during the Class Period differ materially from customer to customer.

5. During the Class Period, the Overdraft Fee ranged from $32.00 to $36.00. SunTrust will not argue that class certification should be denied on the basis that the amounts of putative class members' individual claims related to Overdraft Fees are sufficiently large for it to be feasible for such claims to be brought individually. . . .

In 2013, Bickerstaff moved for class certification, pursuant to OCGA § 9-11-23. SunTrust opposed class certification, arguing, in relevant part, that (1) the class-action waiver in the Rules and Regulations precluded certification; (2) Bickerstaff could not opt out of the arbitration agreement on behalf of the class; and (3) Bickerstaff could not satisfy the numerosity, commonality, typicality, and adequacy of representation requirements for class certification under OCGA § 9-11-23. In reply, Bickerstaff asserted, among other arguments, that the class-action waiver

was unconscionable, and, alternatively, was unenforceable as a matter of law because it was a non-severable part of the unenforceable jury trial waiver.

Following a hearing, the trial court denied Bickerstaff's motion for class certification, finding that the class lacked numerosity because Bickerstaff could not reject arbitration on behalf of the putative class.[3] Bickerstaff appealed the denial of class certification (Case No. A14A1780), and SunTrust cross-appealed the denial of its motion to compel arbitration (Case No. A14A1781). We affirmed the trial court's denial of both motions. *Bickerstaff v. SunTrust Bank*, 332 Ga. App. 121 (770 SE2d 903) (2015) ("*Bickerstaff I*"). Bickerstaff appealed the class certification issue to our Supreme Court,[4] and the Court reversed and remanded the case for further proceedings, holding that

> the terms of the arbitration rejection provision of SunTrust's deposit
> agreement do not prevent Bickerstaff's class action complaint from
> tolling the contractual limitation for rejecting that provision on behalf
> of all putative class members until such time as the class may be

---

[3] In reaching its decision, the trial court only addressed the numerosity factor under OCGA § 9-11-23 (a) and did not consider the other remaining factors, or the validity and effect of the class-action waiver in the Rules and Regulations.

[4] SunTrust did not appeal the determination that Bickerstaff had opted out of the mandatory arbitration provision by filing the underlying complaint. *Bickerstaff II*, 299 Ga. at 461 n.4.

certified and each member makes the election to opt out or remain in the class. Accordingly, the numerosity requirement of OCGA § 9-11-23 (a) (1) for pursuing a class complaint is not defeated on this ground.

*Bickerstaff v. Suntrust Bank*, 299 Ga. 459, 470 (788 SE2d 787) (2016) ("*Bickerstaff II*"). SunTrust filed a petition for writ of certiorari to the United States Supreme Court, which was denied. See *SunTrust Bank v. Bickerstaff*, 137 SCt 571 (196 LEd 2d 447) (2016).

On remand, following supplemental briefing by the parties,[5] the trial court found that the class-action waiver (contained in the jury trial waiver provision of the Rules and Regulations) was procedurally and substantively unconscionable. Additionally, the trial court found that all of the requirements of OCGA § 9-11-23 were met and certified the following class:

> Every Georgia citizen who had or has one or more accounts with SunTrust Bank and who, from July 12, 2006, to October 6, 2017 (i) had at least one overdraft of $500.00 or less resulting from an ATM or debit card transaction (the "Transaction"); (ii) paid any Overdraft Fees as a result of the Transaction; and (iii) did not receive a refund of those Fees.

---

[5] The trial court explained that it would be considering all of the matters previously briefed, and, therefore, the parties were to use supplemental briefing to address new or additional case law and not to reargue "what has already been said" in the supplemental briefing.

This appeal followed.

"The issues of contract construction and enforceability are generally questions of law for a court to resolve and are therefore subject to de novo review on appeal." *Precision Planning, Inc. v. Richmark Communities, Inc.*, 298 Ga. App. 78, 78 (679 SE2d 43) (2009). We review a trial court's grant of class certification for abuse of discretion. See *J. M. I. C. Life Ins. Co. v. Toole*, 280 Ga. App. 372, 375 (2) (634 SE2d 123) (2006). With these principles in mind, we turn to SunTrust's enumeration of errors.

1. The first issue before us is whether the class-action waiver in SunTrust's Rules and Regulations is enforceable. The trial court found that the class-action waiver was unconscionable and therefore unenforceable. In three interrelated enumerations of error, SunTrust argues that the trial court erred in finding that the class-action waiver was unconscionable. On the other hand, Bickerstaff argues that we need not reach the question of unconscionability because the class-action waiver is unenforceable as a matter of law as it is a non-severable, integrated part of the legally unenforceable jury trial waiver. SunTrust does not dispute that the jury trial

waiver is unenforceable as a matter of law in Georgia,[6] but maintains that the class-action waiver is severable from the otherwise invalid provision. For the reasons that follow, we agree with Bickerstaff.

Our Supreme Court has held "that pre-litigation contractual waivers of the right to trial by jury are not enforceable in cases tried under the laws of Georgia." *Bank South, N.A. v. Howard*, 264 Ga. 339, 340-341 (444 SE2d 799) (1994). SunTrust's class-action waiver is not an independent provision. Rather, it is a single sentence contained in the unenforceable jury trial waiver provision. Nevertheless, SunTrust maintains that the class-action waiver is severable based on the general severability clause appearing at the beginning of the Rules and Regulations, which provides that "[a] determination that any part of this agreement is invalid or unenforceable will not affect the remainder of this agreement." However, "[t]he concept of severability refers to striking a distinct part [of a contract and allowing the remainder to stand], not to excising certain language contained in a single provision." *AMB Property, L.P. v. MTS, Inc.*, 250 Ga. App. 513, 515 (551 SE2d 102) (2001) (footnote omitted); see also

---

[6] SunTrust notes that, although pre-litigation contractual jury trial waivers are unenforceable in Georgia, such waivers are enforceable in other states where SunTrust operates. That fact, however, is irrelevant to this appeal because it is undisputed that Georgia law applies in this case.

OCGA § 13-1-8 (a) ("A contract may be either entire or severable. In an entire contract, the whole contract stands or falls together. In a severable contract, the failure of a distinct part does not void the remainder."). In other words, the severability clause allows the remainder of the Rules and Regulations to stand if the jury trial waiver, or any other provision, is voided or deemed unenforceable. The severability clause, however, does not authorize SunTrust or the courts to excise a single sentence (the class-action waiver) from a single integrated provision (the jury trial waiver). *AMB Property*, 250 Ga. App. at 515. Accordingly, because the class-action waiver is a non-severable part of the unenforceable jury trial waiver provision, we agree with Bickerstaff that the class-action waiver is unenforceable as a matter of law.[7]

2. SunTrust argues on appeal that, even in the absence of the class-action waiver, class certification under OCGA § 9-11-23 (b) (3) was inappropriate because individual issues predominate over any common question of law or fact. For the

___

[7] Although the trial court did not find this issue dispositive, "[u]nder the right for any reason doctrine, [we] will affirm a judgment if it is correct for any reason, even if that reason is different than the reason upon which the trial court relied." *Maynard v. Snapchat, Inc.*, 346 Ga. App. 131, 137 (2) (816 SE2d 77) (2018) (citation and punctuation omitted).

12

reasons that follow, no abuse of discretion appears in the trial court's decision to certify the class.

The requirements for class certification are set forth in OCGA § 9-11-23 (a) and (b). "In determining the propriety of a class action, the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits but whether the requirements of OCGA § 9-11-23 have been met." *Fortis Ins. Co. v. Kahn*, 299 Ga. App. 319, 324 (2) (c) (683 SE2d 4) (2009) (citation, punctuation and footnote omitted). Thus, in order to certify a class a trial court must find that:

> (1) [t]he class is so numerous that joinder of all members is impracticable;

> (2) [t]here are questions of law or fact common to the class;

> (3) [t]he claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) [t]he representative parties will fairly and adequately protect the interests of the class.

13

OCGA § 9-11-23 (a).[8] Additionally, the trial court must determine that at least one ground of OCGA § 9-11-23 (b) is satisfied. See *Bickerstaff II*, 299 Ga. at 461-462 ("Under Georgia law, a case may proceed as a class action if all prerequisites of OCGA § 9-11-23 (a) are satisfied: numerosity, commonality, typicality, and adequacy, and if at least one ground of OCGA § 9-11-23 (b) is satisfied.") (citation and punctuation omitted). In relevant part, OCGA § 9-11-23 (b) (3) provides that a class action may be maintained if "[t]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

"Trial judges have broad discretion in deciding whether to certify a class, and plaintiffs bear the burden of proving class certification is appropriate. Absent an abuse of the trial judge's discretion in certifying a class, such decision must be affirmed." *J. M. I. C. Life Ins.*, 280 Ga. App. at 375 (2) (citations omitted). "Moreover, we will not reverse factual findings in a trial court's class certification order unless they are clearly erroneous. Under the 'clearly erroneous' test, factual

---

[8] SunTrust does not challenge the trial court's finding that the prerequisites of OCGA § 9-11-23 (a) were satisfied.

14

findings must be affirmed if supported by any evidence." *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 729 (3) (698 SE2d 19) (2010) (citation and punctuation omitted).

First, SunTrust asserts that class certification is improper under OCGA § 9-11-23 (b) (3) because the class-action waiver is enforceable, and, regardless, whether the waiver is procedurally unconscionable is an individualized issue. We disagree. As discussed in Division 1, the class-action waiver is unenforceable as a matter of law.

Second, SunTrust argues that whether its overdraft fees constitute interest cannot be determined on a class-wide basis because the particular services involved and costs incurred by SunTrust vary with each fee, and "[a] service charge is not interest if it was based upon some service rendered, trouble encountered, inconvenience sustained or risk assumed by [SunTrust], other than the advance of money." However, this argument is belied by SunTrust's stipulation that it "would not argue that class certification should be denied on the basis that the systems or processes used to record an Overdraft and assess an Overdraft Fee . . . differ materially from customer to customer." Furthermore, "[t]he commonality requirement does not require that all questions of law and fact be common to every member of the

15

class. Rather, the rule requires only that resolution of the common questions affect all or a substantial number of the class members." *Brenntag Mid South, Inc. v. Smart*, 308 Ga. App. 899, 903-904 (2) (a) (ii) (710 SE2d 569) (2011) (citation and punctuation omitted); *J. M. I. C. Life Ins.*, 280 Ga. App. at 375 (2) ("a class action is authorized if the members of the class share a common right and common questions of law or fact predominate over individual questions of law or fact. The nature of the right to be enforced may be in common, though the facts as to each member of the alleged class may be different") (citations and punctuation omitted). Moreover, "[w]hat matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." See *Wal-Mart Stores, Inc. v. Dukes*, 564 U. S. 338, 350 (II) (A) (131 SCt 2541, 180 LEd2d 374) (2011) (citation and punctuation omitted).

Here, the putative class members challenge the legality of SunTrust's overdraft fees, namely whether the overdraft fees constitute unlawful interest under Georgia law. This question will be determined by examination of a common set of terms in identical form contracts that apply to all members of the putative class, and we have held that "claims arising from interpretation of form agreements are considered to be 'classic cases' for treatment as a class action." *Resource Life*, 304 Ga. App. at 729 (3)

16

(a) (citation and punctuation omitted). More importantly, the answer to this question will not vary with each class member. Thus, a classwide proceeding in this case has the capacity to generate common answers that will drive the resolution of this litigation and renders a class action superior to other available methods for the fair and efficient adjudication of the controversy. *Dukes*, 564 U. S. at 350 (II) (A).

Third, SunTrust asserts that class certification is improper because, if the overdraft fees constitute interest, then the term of each "loan" will have to be determined on an individualized basis for purposes of calculating damages. In other words, the "loan" begins on the date the overdraft is incurred and ends on the date the overdraft and the overdraft fee(s) are repaid by the account holder (i.e. when the account holder brings his or her account balance positive). Therefore, SunTrust is correct that, if Bickerstaff prevails on his claim that the overdraft fees constitute interest, the term of each loan will vary from customer to customer. However, it is well established that "the need for individual damage calculations does not defeat class certification, so long as the liability inquiry presented common legal issues." *Earthlink, Inc. v. Eaves*, 293 Ga. App. 75, 77 (1) (666 SE2d 420) (2008) (footnote omitted). As discussed above, the common legal issue of whether SunTrust's overdraft fees constitute interest predominates and the answer to that question will

17

determine SunTrust's liability for all putative class members. Furthermore, SunTrust stipulated that it maintains and can access information for each putative class member's account related to the date and amounts of any overdraft fees charged ("the loan") during the relevant class period, the date that such fees were paid (i.e. the date the customer's account had a positive balance and the loan was therefore "paid off"), and any adjustments, credits, or refunds any class member may have received in relation to the charged overdraft fees. Bickerstaff's expert in data analysis stated in his deposition that it would be possible to use this information to determine the term of the loans for each customer. Thus, any individual factual variations concerning the term of the loan(s) would not necessitate the application of a different set of legal principles. Rather, "when the loan termination date is plugged in to the other information [SunTrust] admits it keeps for all [account holders], it is simply a formulaic administrative matter to determine both who is owed a refund and how much each [account holder] is owed. The fact that there may be differences in the damages for the members of the class does not prevent certification[.]" *Resource Life*, 304 Ga. App. at 731-732 (3) (a) (citation and punctuation omitted).

Finally, SunTrust asserts that class certification is improper because each class member's ability to recover on the claims for conversion and money had and received

18

will depend on an individualized inquiry as to whether the voluntary payment doctrine bars recovery.[9] This argument is unpersuasive. Bickerstaff's claims for money had and received and conversion seek to recover all payments under SunTrust's overdraft program deemed to be usurious, and it is well-established that the voluntary payment doctrine does not apply to the recovery of usury. See, e.g., *Dell v. Kugel*, 99 Ga. App. 551, 561 (8) (109 SE2d 532) (1959) (holding "[t]hat usury [voluntarily] payed [sic] may be recovered back, under the laws of this State") (citation and punctuation omitted); *Morgan v. Shepherd*, 171 Ga. 33, 38-39 (3) (154 SE 780) (1930) (explaining that usury voluntarily paid can be recovered because "a payment of usurious interest is regarded as obtained by taking advantage of the necessities of the borrower, and is therefore excepted from the ordinary rule that one who voluntarily pays money on an illegal demand can not maintain an action to recover such payment"). Thus, if Bickerstaff is successful on his claim that SunTrust's overdraft fees constitute interest and are usurious, the voluntary payment

---

[9] Under the voluntary payment doctrine, "[p]ayments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity thereof or to release person or property from detention or to prevent an immediate seizure of person or property." OCGA § 13-1-13.

doctrine will not bar recovery by the putative class members. Accordingly, this issue does not preclude class certification.

In light of the foregoing, we conclude the trial court did not abuse its discretion in certifying the class.

*Judgment affirmed. Rickman and Coomer, JJ., concur.*

ON MOTION FOR RECONSIDERATION

SunTrust has moved for reconsideration of our decision, focusing on our ruling in Division 1, regarding the issue of severability of the class-action waiver from the legally unenforceable jury trial waiver. In its motion, SunTrust substantively argues for the first time in this Court that the class-action waiver is an additional independent promise that can be severed and stand alone based on the waiver's plain language. SunTrust did not raise this argument in its appellant brief or reply brief in this Court, nor did it cite a majority of the cases on which it now relies for its position.[2] Furthermore, a review of the record confirms that it did not make this substantive argument in the trial court. Thus, SunTrust waived this argument. See *Milligan v. State*, 307 Ga. App. 1, 6 (703 SE2d 1) (2010) (denying motion for reconsideration because it relied on a newly-raised argument); see also *Estate of Nixon v. Barber*, 340 Ga. App. 103, 110 (2) (796 SE2d 489) (2017) (issue abandoned where appellant

---

[2] In its initial brief before us, SunTrust noted in a footnote that "the contract states any invalid language is severable." Similarly, in its reply brief, SunTrust asserted, without any supporting argument, that "the sentence waiving a jury trial and the sentencing waiving class procedures are distinct, independent promises." SunTrust never argued or provided any authority in its briefs before us or the court below that the plain language of the waiver compelled a conclusion that the class-action waiver was an independent, stand alone provision.

failed to cite authority in support of same); *Locke's Graphic & Vinyl Signs, Inc. v. Citicorp Vendor Finance, Inc.*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007) ("An argument not raised in the trial court is waived and cannot be raised for the first time on appeal.").

SunTrust also argues incorrectly that our decision prohibits a court from severing one or more contractually enforceable sentences from an otherwise unenforceable contractual clause, regardless of the circumstances and without considering the contract as a whole. And, according to SunTrust, this holding conflicts with other precedent. Given that SunTrust misstates our holding, we take this opportunity to clarify our decision. Based on the unique context of this case we determined the class-action waiver is not severable because it was part of a single integrated provision. OCGA § 13-1-8 (a) ("A contract may be either entire or severable. In an entire contract, the whole contract stands or falls together. In a severable contract, the failure of a distinct part does not void the remainder."); *AMB Property, L.P. v. MTS, Inc.*, 250 Ga. App. 513, 515 (551 SE2d 102) (2001) ("The concept of severability refers to striking a distinct part [of a contract and allowing the remainder to stand], not to excising certain language contained in a single provision.") (footnote omitted).

22

Contracts of adhesion, such as the one here "are strictly construed against the drafter"– in this case SunTrust. *Western Pacific Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 681 (1) (n.5) (601 SE2d 363) (2004). Additionally, "[i]t is the function of the court to construe the contract as written and not to make a new contract for the parties." *Record Town, Inc. v. Sugarloaf Mills Ltd. Partnership of Georgia*, 301 Ga. App. 367, 370 (3) (687 SE2d 640) (2009) (citation and punctuation omitted); *Fernandes v. Manugistics Atlanta, Inc.*, 261 Ga. App. 429, 433 (1) (582 SE2d 499) (2003) ("Neither the trial court nor this Court is at liberty to rewrite or revise a contract under the guise of construing it.").

When determining whether the class-action waiver is an independent provision, we do not read the waiver in isolation, but rather consider it in the context of the contract as a whole. We hold only that, given the context in which the waiver appears and when the contract is read as a whole, the class-action waiver that SunTrust seeks to sever from its unenforceable jury trial waiver is, in fact, an integral part of that contractual clause, and, therefore, it cannot be severed. Specifically, the class-action waiver appears as the final sentence of the paragraph entitled "JURY TRIAL WAIVER" in SunTrust's 40-page single-spaced, fine print contract. The dispute resolution section of the contract clearly and independently identifies both the

23

arbitration provision and the jury trial waiver as distinct applicable provisions. Both appear with distinct headings, distinct paragraphs, and distinct typeface separating those provisions from the surrounding text. Although SunTrust maintains that the class-action waiver was intended to be a stand alone provision separate from the jury trial waiver, unlike the arbitration provision and the jury trial waiver, it was not independently identified or otherwise distinguished as a distinct type of waiver or a distinct rule of litigation. The class-action waiver also appears in the same typeface as the jury trial waiver. It was not separated from the jury trial waiver by indentation, numbers, or characters. Nor is it otherwise written or displayed in such a way that it can reasonably be construed as an independent and distinct part separate from the jury trial waiver. Rather, when read as a whole, it is clear that the class-action waiver was intended to be read in conjunction with the jury trial waiver. *Wilson v. Clark Atlanta University, Inc.*, 339 Ga. App. 814, 834 (2) (c) (794 SE2d 422) (2016) (citation and punctuation omitted) ("[W]ords [in a contract], like people, are judged by the company they keep.").

In other words, as we noted in our decision, the jury trial waiver and the class action waiver when considered in context constitute a single, integrated provision. And, it is because we concluded that the class-action waiver is not a distinct part that

24

it cannot be severed as "[t]he concept of severability refers to striking a distinct part [of a contract and allowing the remainder to stand], not to excising certain language contained in a single provision." *AMB Property*, 250 Ga. App. at 515 (footnote omitted). SunTrust asks us to rewrite or revise the contract by striking the invalid jury trial waiver, while enforcing separately the inextricably intertwined, integrated class-action waiver, which we cannot do. *Record Town*, 301 Ga. App. at 370 (3); *Fernandes*, 261 Ga. App. at 433 (1). Although SunTrust disagrees with our decision, nothing it has cited in its motion demonstrates that we have misapplied the law or that there is controlling authority[3] which would require a different judgment than that rendered. For these reasons, we deny the motion for reconsideration. See Court of Appeals Rule 37 (e) ("[R]econsideration shall be granted on motion only when it appears that the Court overlooked a material fact in the record, a statute, or a decision which is controlling authority and which would require a different judgment from that rendered, or has erroneously construed or misapplied a provision of law or a controlling authority.").

---

[3] We have reviewed all of the authorities cited by SunTrust and find that none of them are squarely on point, such that they require a different judgment than that previously rendered.

25