[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13111

Non-Argument Calendar

_____

AUTO-OWNERS INSURANCE COMPANY,

Plaintiff-Appellee,

*versus*

OVATION CONDOMINIUM ASSOCIATION, INC.,

Defendant-Appellant,

ALYS W. COX,

Defendant.

_____

2                Opinion of the Court    23-13111 & 23-13112

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-05326-LMM

_____

No. 23-13112

Non-Argument Calendar

_____

AUTO-OWNERS INSURANCE COMPANY,

Plaintiff-Appellee,

*versus*

OVATION CONDOMINIUM ASSOCIATION, INC.,

Defendant-Appellant,

BRIANNE K. WYKIS,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-05328-LMM

_____

Before JORDAN, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

In two separate Georgia state-court proceedings, Alys Cox and Brianne Wykis sued Ovation Condominium Association, alleging that Ovation had permitted exhaust fumes from a backup diesel generator to enter their units, causing both personal injury and property damage. In response, Ovation's insurer, Auto-Owners Insurance Co., filed the two identical federal suits now on appeal, each seeking declaratory relief stating that Auto-Owners had no obligation to defend Ovation from the Cox and Wykis lawsuits. Because Ovation unambiguously "occupied" the generator and its surrounding space, Ovation's insurance policy excludes coverage for the Cox and Wykis claims. We therefore affirm the district court's grant of summary judgment to Auto-Owners in both suits.

## I.

Ovation maintained a diesel generator as a backup power source for its condo building, operating it during power failures and monthly or bimonthly tests. The generator was housed in a utility closet in the basement of the building, below residents' units. Ovation was responsible for managing and maintaining all of the common and shared property in the building, which included the generator and the closet. Although the exhaust from the generator was supposed to safely vent outside, Cox and Wykis allege in their suits that Ovation's negligence caused fumes from the generator to

seep into the residents' units through the exterior walls of the condo building.

Auto-Owners claims that the pollution-exclusion provision in Ovation's commercial general liability policy applies to these two suits. Subject to exceptions not applicable here, that policy states that Ovation's policy "does not apply to":

> "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" . . . [a]t or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

Ovation does not dispute that the toxic substances emitted as exhaust by the diesel generator qualify as "pollutants" within the meaning of this provision. It is also undisputed that the generator and the utility closet, from which the pollutants were discharged, were not "rented or loaned to" Ovation. So the only question in this suit is whether Ovation ever "owned or occupied" the two.

Without deciding whether Ovation had ever "owned" the generator and closet, the district court ruled that Ovation "occupied" them because it managed the space and regularly operated the generator. It therefore granted summary judgment to Auto-Owners, ruling that Auto-Owners had no duty to defend or indemnify Ovation against the Cox and Wykis suits. This is Ovation's appeal.

## II.

We review a district court's interpretation of the terms of an insurance contract de novo. *Ace Am. Ins. Co. v. Wattles Co.*, 930 F.3d 1240, 1251 (11th Cir. 2019).

## III.

Both parties agree that Georgia law applies to the interpretation of Ovation's insurance policy. Under Georgia law, when interpreting an insurance policy, the "cardinal rule" is "to determine and carry out the intent of the parties." *Nat'l Cas. Co. v. Georgia Sch. Bds. Ass'n-Risk Mgmt. Fund*, 818 S.E. 2d 250, 253 (Ga. 2018). The policy is to be read "as a layman would," and "not as it might be analyzed by an insurance expert or an attorney." *State Farm Mut. Auto. Ins. Co. v. Staton*, 685 S.E. 2d 263, 265 (Ga. 2009) (quotation omitted). "[E]xclusions will be strictly construed against the insurer and in favor of coverage." *Nat'l Cas. Co.*, 818 S.E. 2d at 253.

If a policy's language is unambiguous, the contract's plain terms must be enforced. *State Farm Mut. Auto Ins. Co.*, 685 S.E. 2d at 266. But if the policy is found to be ambiguous, then its provisions are "construed liberally against the insurer and most favorably for the insured." *Id.* at 265. Georgia courts find an insurance contract ambiguous "only if its terms are subject to more than one reasonable interpretation." *Id.* Courts may not "strain the construction of the policy so as to discover an ambiguity." *Id.* at 265–66 (quotation omitted). If "the language fixing the extent of liability of an insurer is unambiguous and but one reasonable

construction is possible, the court must expound the contract as made." *Id.* (quotation omitted).

Ovation's insurance policy does not define the term "occupied." Accordingly, we do as Georgia courts would do, looking to that word's "plain, ordinary and popular" meaning. *Record Town, Inc. v. Sugarloaf Mills Ltd. P'ship of Georgia*, 687 S.E. 2d 640, 643 (Ga. App. 2009); *see also* O.C.G.A. § 13-2-2(2). Such meaning can be derived by reference to contemporary dictionary definitions. *See Record Town, Inc.*, 687 S.E. 2d at 643; *Ace Am. Ins. Co.*, 930 F.3d at 1259. Black's Law Dictionary defines "occupy" as to "seize or take possession of"; "take up the extent, space, room, or time of"; "hold possession of; to be in actual possession of"; "employ; to possess or use the time or capacity of"; "live or stay in (a place)." *Occupy*, Black's Law Dictionary (11th ed. 2019). Similarly, the Supreme Court of Georgia, in a case interpreting the meaning of the statutory phrase "occupier of real property," consulted dictionary definitions which defined "occupy" as meaning "to take possession of or inhabit"; "to dwell or reside in"; and "to have, hold, or take as a separate space, possess, or reside in." *Nuckles v. State*, 853 S.E. 2d 81, 86–87 (Ga. 2020) (alterations adopted) (quotations omitted).

These definitions permit only one conclusion in this case: Ovation unambiguously "occupied" the utility closet and diesel generator. Ovation's community association manager testified that Ovation "exists to maintain" the common elements of the condominium, which consists of "all portions of the Condominium

23-13111 & 23-13112   Opinion of the Court                7

not located within the boundaries of a unit." The utility closet and generator in question are part of those common elements. By placing the generator in the closet, running at least monthly tests on the generator, and generally managing and maintaining the space, Ovation "occupied"—meaning, it "took possession of," "used the capacity of," and "inhabited"—the closet and the generator. *See Occupy*, Black's Law Dictionary (11th ed. 2019); *Nuckles*, 853 S.E. 2d at 86–87.

Ovation's only response is that, as a condominium association, all common elements in the building were jointly owned by the residents as tenants-in-common, not by Ovation itself. It argues that the term "occupied by" is ambiguous when applied to an entity that exists to manage a space owned by others. And because it is ambiguous, Ovation argues, the provision should be construed in favor of coverage, against the insurer.

We disagree—the legal ownership of the closet and generator does not affect the interpretation of the word "occupied" in the pollution-exclusion provision. *First*, the policy lists "owned" as a separate way to qualify for the exclusion, strongly suggesting that "occupied" must reach situations that are not encompassed by ownership. *See Pomerance v. Berkshire Life Ins. Co. of Am.*, 654 S.E. 2d 638, 641 (Ga. App. 2007) ("[A] court should, if possible, construe a contract so as not to render any of its provisions meaningless." (quotation omitted)). *Second*, in *Nuckles*, the Supreme Court of Georgia did not hesitate to find that a tenant of a rehabilitation facility who both parties agreed did not own his room nevertheless

"occupied" it under that word's plain and ordinary usage.  853 S.E. 2d at 86–87.  *Third*, and finally, although our job while sitting in diversity is to determine the meaning of this insurance contract under Georgia law, we note that other federal courts of appeals analyzing identical contractual language have agreed that the plain meaning of the pollution-exclusion provision dictates that a space is "occupied by" its principal user even if that entity is not the space's legal owner.  *See Nascimento v. Preferred Mut. Ins. Co.*, 513 F.3d 273, 275, 276 n.1, 278 (1st Cir. 2008); *Gregory v. Tennessee Gas Pipeline Co.*, 948 F.2d 203, 206–07 (5th Cir. 1991).  We thus conclude that the fact that Ovation may not have owned the utility closet and generator does not defeat the conclusion that it occupied them.

⋆    ⋆    ⋆

Because the utility room and diesel generator were "occupied by" Ovation, the pollution-exclusion provision in Ovation's insurance contract applies.  The district court's grants of summary judgment to Auto-Owners are therefore **AFFIRMED**.