[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13377

_____

NORTHERN ILLINOIS GAS COMPANY,

Plaintiff-Appellant,

*versus*

USIC, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-05147-CC

_____

Before ROSENBAUM and LAGOA, Circuit Judges, and SINGHAL, * District Judge.

PER CURIAM:

In 2016, an explosion occurred near Plaintiff-Appellant Northern Illinois Gas Company's (doing business as Nicor Gas Company ("Nicor")) gas line when other utilities were working in the area. The explosion caused catastrophic injuries and property damage, which led to numerous lawsuits against Nicor. But Nicor had previously entered into a Master Locating Service Agreement (the "Agreement") with Defendant-Appellee USIC, LLC, which governed USIC's relationship with Nicor as it concerned USIC's agreement to provide gas-line-locating services to those excavating in the area of Nicor's lines. In that Agreement, USIC agreed to indemnify, hold harmless, and defend Nicor from any and all manner of losses and damages. So Nicor filed suit in the Northern District of Georgia to enforce this indemnity provision.

In the district court, the court determined that the indemnity provision violated Georgia's public policy, O.C.G.A § 13-8-2(b), and was unenforceable. According to the district court's reading, the Agreement required USIC to defend Nicor in all suits, even if the alleged acts were based on Nicor's sole negligence—and that was contrary to Georgia's public policy. So the district court

---

* The Honorable Anuraag Singhal, U.S. District Judge for the Southern District of Florida, sitting by designation.

granted summary judgment for USIC.  Now on appeal, Nicor argues that the district court erred in granting USIC's motion for summary judgment because (1) USIC's duty to indemnify and defend are based on the actions of only USIC, and (2) the insurance exception to O.C.G.A § 13-8-2(b) applies.  In the alternative, Nicor contends that (1) the duty to indemnify remains enforceable because Paragraph 9.1 of the Agreement explicitly states that USIC is not required to indemnify Nicor if Nicor is solely negligent, and (2) the Agreement allows this Court to sever any unenforceable provisions or portions thereof from the remainder of the agreement.

After careful consideration and with the benefit of oral argument, we reverse the judgment as it relates to USIC's duty to indemnify, and we affirm it as to USIC's duty to defend.

## I.    BACKGROUND

Nicor is an Illinois corporation that owns and operates a natural-gas distribution system.  In 2014, Nicor and USIC, a Delaware limited-liability company providing utility-line-locating services, entered into the Agreement.  The Agreement was in place from January 1, 2014, to January 1, 2018.  As part of the Agreement, USIC agreed to perform locating services on Nicor's behalf whenever locating requests were received by excavators at or near utilities owned by Nicor.

In 2017, Michael J. Smith, on behalf of Thomas Smith, filed a complaint in Illinois state court against Metro Fibernet, LLC ("Metronet"), ACO Cable Construction, Inc. ("ACO"), and USIC

arising from injuries suffered from a gas explosion that occurred in Romeoville, Illinois.  According to Thomas Smith, sometime before October 11, 2016, Metronet contracted with ACO to perform directional boring to install fiber-optic cable.  Thomas Smith alleges that he suffered catastrophic injuries when an ACO cable struck a Nicor gas line, causing an explosion.  Metronet, ACO, and USIC each filed third-party complaints against Nicor, seeking contribution in the event that any were found liable for Thomas Smith's injuries.  Additionally, on April 2, 2018, various insurance companies filed suit against Metronet, ACO, USIC and Nicor, seeking compensation for property damage caused by the explosion.

Following the filing of these various Illinois lawsuits, Nicor sued USIC for breach of contract in the Northern District of Georgia.  Nicor alleged that USIC was obligated to defend and to indemnify Nicor against all claims asserted in the Illinois lawsuits.  In support of its claims, Nicor relied on Paragraph 9.1 of the Agreement:

> To the fullest extent permitted by law, [USIC] shall *defend, indemnify and hold harmless* [Nicor], its affiliates, successors and assigns, and its employees, against any and all manner of losses, costs, expenses, damages, and fines or penalties, including without limitation, reasonable attorneys' fees, which [Nicor], its affiliates, successors and assigns, and its employees, suffer or incur as a result of any claim, demand, suit, action, cause of action, investigation, levy, fine, penalty or judgment made or obtained by any individual, person, firm, corporation, [USIC] employee,

21-13377                Opinion of the Court                    5

contractor, governmental agency, or other person or entity in connection with, arising from, or in any manner related to any actual or alleged act or omission [(the "Indemnification Provision")] of any one or more of the following:

(a) [USIC] and any subcontractor of [USIC], and any officers, directors, agents, representatives or employees of [USIC] or of any such subcontractor in any manner arising from, connected with, or related to any Services performed or contracted to be performed pursuant to this Agreement; and

(b) [Nicor], its successors and assigns, and its officers, directors, agents, representatives or employees, to the extent that it shall be claimed that any of them are liable for any reason because of any such act or omission of [USIC] or any subcontractor of [USIC], or any officers, directors, agents, representatives or employees of any of them, whether or not such officers, directors, agents, representatives or employees are claimed to be agents or employees of [Nicor].

Provided, however, that [USIC] shall not be responsible to *indemnify or hold harmless* [Nicor] for losses or damages caused by the sole negligence of [Nicor], its agents or employees [(the "Exculpatory Clause")].

Doc. No. 33-1, at 23 (emphases added).

Nicor also relied on Paragraph 8, the Insurance Provision:

Unless otherwise agreed to in writing, [USIC] will, at its own expense, carry and maintain during this

Agreement the insurance coverage (with companies satisfactory to [Nicor]) in amounts no less than what is specified on Exhibit C attached hereto and incorporated herein. All insurance policies or bonds required by this Agreement will be issued by insurance companies licensed to do business within the State of Georgia and any other state in which the Services are to be performed with an A.M. Best Rating of not less than "A-VII." [USIC] will also be responsible for ensuring that its subcontractors comply with the insurance requirements of this Section.

*Id.* at 22.

### A. Motion to Stay Proceedings

In the district court, USIC moved to stay the proceedings because, it argued, its duty to defend and indemnify Nicor in the underlying Illinois lawsuits was dependent on Nicor's portion of the fault. Relying on the last sentence of Paragraph 9.1 of the Agreement, USIC claimed that if the acts underlying the Illinois suits were based on Nicor's *sole* negligence, then by the terms of the Agreement, it was not obligated to defend or indemnify Nicor. USIC asked the district court "not . . . to dismiss the present suit" but to stay the federal proceedings until the "Illinois suit[s] resolv[ed] key question[s]" on which the merits in this case depended. Doc. No. 9-1, at 8.

Nicor opposed USIC's motion to stay the proceedings and argued that if Nicor were solely liable in the underlying Illinois

lawsuits, then USIC would not have to indemnify Nicor because of the last sentence in Paragraph 9.1, which we refer to as the "Exculpatory Clause." But USIC *would* still have to defend Nicor because the Agreement contained no "sole negligence" exception governing USIC's duty to defend Nicor. So, Nicor reasoned, "whether the court in the [Illinois lawsuits] determines that the damages were caused by the sole negligence of Nicor has no bearing on USIC's duty to defend Nicor," and there was no reason to stay the federal proceedings. Doc. No. 14, at 6.

USIC replied that the entire Indemnification Provision in Paragraph 9 of the Agreement violated Georgia's public policy and was therefore unenforceable under O.G.C.A. § 13-8-2(b). Section 13-8-2 states, in relevant part, that "[a] contract that is against the policy of the law cannot be enforced," and a contract to "indemnify, hold harmless, . . . or defend" a party for its "sole negligence" is against Georgia's public policy.[1] In the alternative, USIC suggested, the "sole negligence" Exculpatory Clause in Paragraph 9.1 should also limit USIC's duty to defend Nicor.

The district court partially granted USIC's motion to stay the proceedings. On the one hand, it stayed Nicor's claims relating to USIC's duty to indemnify Nicor "pending [the] relevant final determinations" in the Illinois lawsuits. Doc. No. 32, at 2. But as to

---

[1] The Agreement is governed by Georgia law. *See* Doc. No. 33-1, at 26 ("This Agreement will be governed by and construed in accordance with the laws of the State of Georgia, without reference to conflict of laws principles.")

Nicor's claims based on USIC's duty to defend Nicor, the district court denied USIC's motion to stay the proceedings. Instead, the district court ordered the parties to continue with litigation over the application of O.C.G.A. § 13-8-2(b) to the duty to defend and the duty to indemnify.

### B. Summary-judgment Proceedings

Following the district court's order on the motion to stay, USIC and Nicor cross-moved for summary judgment. USIC argued that it was entitled to summary judgment as a matter of law because the Indemnification Provision violated O.C.G.A § 13-8-2. As a reminder, this statute states that an agreement to indemnify a party for its "sole negligence" violates Georgia's public policy, so it "cannot be enforced."

So USIC asserted that the Agreement violated Georgia's public policy because USIC was required to defend Nicor against any and all claims, including those based on Nicor's sole negligence. As a result, USIC contended that it "ha[d] no duty to defend or indemnify Nicor in the underlying cases." Doc. No. 35-8, at 9.

In Nicor's motion for summary judgment, it argued that "USIC ha[d] two separate and independent obligations under the [Indemnification Provision]: (1) a duty to defend Nicor from [the] underlying claims, and (2) a duty to indemnify Nicor from such claims." Doc. No. 38-3, at 7. In Nicor's view, the district court could decide whether the duty to defend applied independently of whether the duty to indemnify applied. As Nicor saw things, the

district court did not need to wait for the Illinois state proceedings to end because USIC's obligation to defend did not depend on the outcome of the Illinois lawsuits; rather, it depended solely on the plaintiffs' allegations in the Illinois complaints. As for O.C.G.A. § 13-8-2(b), Nicor argued that the statute did not apply because only USIC's acts or omissions triggered the Indemnification Provision.

At this point, the procedural history gets a bit messy. The district court held a summary-judgment hearing in March 2019. At the hearing, the district court orally "granted" USIC's motion for summary judgment. The court reasoned that the Indemnification Provision violated O.C.G.A § 13-8-2(b) because the language of the Agreement required USIC to defend Nicor even if Nicor were solely negligent in causing the gas-line explosion at issue in the Illinois lawsuits. The district court also declined to apply the insurance exception to O.C.G.A § 13-8-2(b)[2] because USIC's insurance

---

[2] Section 13-8-2(b) provides that this section

> shall not affect any obligation under workers' compensation or coverage or insurance specifically relating to workers' compensation, nor shall this subsection apply to any requirement that one party to the contract purchase a project specific insurance policy, including an owner's or contractor's protective insurance, builder's risk insurance, installation coverage, project management protective liability insurance, an owner controlled insurance policy, or a contractor controlled insurance policy.

O.C.G.A. § 13-8-2(b).

coverage did not provide coverage for Nicor's acts or omissions. At the conclusion of the hearing, the district court instructed USIC to prepare an order consistent with the court's ruling. At that time, the district court did not enter an order or a judgment. The only entry on the docket was a minute entry.

USIC submitted its proposed order to the district court on April 22, 2019. The proposed order contemplated awarding USIC judgment in full. Nicor opposed the proposed order and argued that it was not consistent with the district court's oral ruling because the district court hadn't granted summary judgment in full. Nicor pointed out that the court had stayed its claims related to USIC's duty to indemnify and took the position that, in any case, USIC's duty to indemnify Nicor was enforceable and could be severed from any portion of the Agreement deemed to be void as against public policy.

On September 2, 2021, the district court adopted USIC's proposed order and issued its opinion. First, the district court explained that, to be prohibited by O.C.G.A. § 13-8-2(b), "an indemnification [and defense] provision must (1) relate in some way to a contract for ʻconstruction, alteration, repair, or maintenance of certain property and (2) promise to indemnify [or defend] a party for damages arising from that own party's sole negligence." Doc. No. 87, at 14 (alteration adopted) (quoting *Kennedy Dev. Co. v. Camp*, 719 S.E.2d 442, 444 (Ga. 2011)). The district court concluded that the Agreement satisfied the first condition because it related to a "construction, alteration, repair, or maintenance of a building

21-13377                Opinion of the Court                11

structure, appurtenances, or appliances, . . . including . . . excavating connected therewith." *Id.* at 15 (alterations in original) (quoting O.C.G.A. § 13-8-2(b). As to the second requirement, the district court determined that the Agreement's duty to defend required USIC to defend Nicor against claims arising from Nicor's sole negligence, and "[n]othing in the language of Paragraph 9.1 limit[ed] the scope of the duty to defend (or the duty to indemnify) to the acts or omissions of USIC alone." *Id.* at 22 (citation omitted). Therefore, the court held, the duty to defend violated Georgia public policy. *Id.*

The district court then turned to Nicor's arguments about the insurance exception to the public policy. It said that O.C.G.A. § 13-8-2(b)'s insurance exception applies if a contract includes an insurance clause that shifts the risk of loss to an insurer. But the district court determined that the Agreement did not unequivocally shift the risk of loss incurred by both parties to the insurer, so the insurance exception from O.C.G.A. § 13-8-2(b) did not apply. Because (1) USIC was required to defend Nicor for any and all claims, including those relating to Nicor's sole negligence, and (2) the insurance exception did not apply, the district court held that the entire Indemnification Provision (as it related to not only the duty to defend but also the duty to indemnify) was unenforceable. The district court entered judgment in full in favor of USIC on the same day. Nicor now appeals the district court's grant of summary judgment.

## II.    STANDARD OF REVIEW

We review grants of summary judgment *de novo*, using the same legal standard as the district court. *Ireland v. Prummell*, 53 F.4th 1274, 1286 (11th Cir. 2022). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When ruling on a motion for summary judgment, "we resolve all ambiguities and draw reasonable factual inferences from the evidence" in favor of the non-moving party. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014) (quoting *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012)).

The interpretation of a contract is also a matter of law subject to *de novo* review. *See Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1237 (11th Cir. 2019).

## III.    DISCUSSION

We divide our discussion into two parts. In Part A, we show that we have jurisdiction to hear this appeal. In Part B we discuss the merits of this appeal.

### A.    We have jurisdiction to hear this appeal.

Before reaching the merits of this appeal we must assure ourselves that we have jurisdiction. After all, "[j]urisdiction is a

prerequisite to the legitimate exercise of [our] judicial power." *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 779 (11th Cir.2005).

We have appellate jurisdiction over "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. The term "final decisions" ordinarily refers to those decisions that "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." *Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177, 183 (2014). We have explained that "[t]he desire for judicial economy and the avoidance of unnecessary piecemeal appeals underlies our final judgment rule." *United States v. Gurney*, 558 F.2d 1202, 1207 (5th Cir. 1977), *overruled on other grounds by Nixon v. Warner Commc'ns*, 435 U.S. 589 (1978).[3]

Our jurisdiction also depends on whether a party files a notice of appeal within the time limits that Federal Rule of Appellate Procedure 4(a) sets forth. *Castleberry*, 408 F.3d at 779. The Supreme Court has reiterated that compliance with the requirements of Appellate Rule 4(a) is "mandatory and jurisdictional." *See Bowles v. Russell*, 551 U.S. 205, 209 (2007) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61 (1982)); *see also Green*

---

[3] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

14                          Opinion of the Court                    21-13377

*v. Drug Enf't Admin.*, 606 F.3d 1296, 1300 (11th Cir. 2010).[4]  Appellate Rule 4 mandates that a "notice of appeal . . . must be filed with the district clerk within 30 days after [the date of] entry of the judgment or order appealed from." FED. R. APP. P. 4(a)(1)(A).

A judgement or order, which Federal Rule of Civil Procedure 58 says requires a separate document, is entered for the purposes of Appellate Rule 4(a) when:

> the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:
>
> - the judgment or order is set forth on a separate document, or
> - 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79(a).

FED. R. APP. P. 4(a)(7)(A)(ii).

But if a party files a timely motion listed in Appellate Rule 4(a)(4)(A)—a "motion for judgment under Rule 50(b), a motion to amend or make additional factual findings under Rule 52(b), some

---

[4] While time limits based on court-created rules aren't jurisdictional, the time limit in Appellate Rule 4 derives from a statute. *See* 28 U.S.C. § 2107(a).  The Supreme Court has explained that time limits Congress has prescribed are jurisdictional in nature. *Compare Bowles*, 551 U.S. at 209 (explaining that Appellate Rule 4(a) comes from a statute), *with Hamer v. Neighborhood Hous. Servs.*, 138 S. Ct. 13, 22 (2017) (concluding that Appellate Rule 4(a)(5)(C) is judge-made and is therefore a claims-processing rule).

21-13377                  Opinion of the Court                    15

motions for attorney's fees under Rule 54, a motion to alter or amend the judgment or for a new trial under Rule 59, or certain motions for relief from the judgment under Rule 60," *see Green*, 606 F.3d at 1301–02—then the appeal period runs from the entry of the order disposing of that last remaining motion. FED. R. APP. P. 4(a)(4)(A). Appellate Rule 4(a)(4)(A) also requires these motions to be timely. *Green*, 606 F.3d at 1302. For example, a motion to alter or amend a judgment must be filed within 28 days after the entry of the order or judgment to toll the appeal period. FED. R. CIV. P. 59(e); *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1359 n.15 (11th Cir. 2010) (noting that an untimely post-judgment motion does not toll the time to appeal).

USIC challenges this Court's jurisdiction over Nicor's appeal. According to USIC, the district court's March 2019 oral ruling was a final decision, and Nicor failed to file a timely appeal within 180 days of its entry onto the civil docket.[5] Because the appeal was not filed within that period, USIC contends that we lack jurisdiction. USIC is mistaken.

As we've noted, the district court issued an oral ruling on March 29, 2019, granting USIC's summary judgment motion in its entirety. Later that same day, a minute sheet about the hearing was entered onto the civil docket. Nicor did not file its notice of

---

[5] As Rule 4(a)(7)(A)(ii) notes, when no separate judgment or order is set forth, once 150 days pass after the entry of a judgment or order that is otherwise appealable onto the civil docket, a party has 30 days to file a timely appeal.

appeal until September 29, 2021, after the district court issued its order and opinion on September 2, 2021.

We have yet to determine whether an oral ruling coupled with a minute entry onto the civil docket counts as a judgment that triggers the 150-day clock for entry of a judgment and the 30-day appeal period. And we need not do so today. Instead, even assuming that the March 2019 oral ruling was a final order that Nicor could appeal, and the minute entry was an entry of judgment, we construe Nicor's Objections to USIC's Proposed Order as a Rule 59(e) motion for reconsideration.

"Whether a motion for post-judgment relief can be categorized as a Rule 59 motion is not determined by whether the movant so labels it." *Wright v. Preferred Rsch., Inc.*, 891 F.2d 886, 889 (11th Cir. 1990). Rather, we must evaluate independently "what type of motion was before the district court, depending upon the type of relief requested." *Id.* Rule 59 applies to motions for reconsideration on matters dealing with the merits of a decision. *Finch v. City of Vernon*, 845 F.2d 256, 258 (11th Cir.1988).

Nicor's objections to the proposed order attacked the district court's decision to dismiss all Nicor's claims—including those based on the duty to indemnify. So, for example, Nicor challenged the district court's ability to dismiss all the claims, given the previously imposed stay. Alternatively, Nicor alleged that its duty-to-indemnify claims should not have been dismissed because they were severable from the duty-to-defend claims and did not violate O.C.G.A. § 13-8-2(b). Even though not all Nicor's objections

attacked the merits of the district court's decision, they did not need to. What matters is that some of its objections challenged the merits of the district court's decision. And because they did, we construe Nicor's objections to USIC's proposed order as a motion for reconsideration pursuant to Rule 59.

Finally, as we have explained, if a party files a *timely* Rule 59(e) motion, then the appeal period runs from the entry of the order disposing of the last remaining motion. It is undisputed that Nicor filed its objections on April 22, 2019, well within the 28-day deadline, making its motion for reconsideration timely. And the district court implicitly ruled on the motion on September 2, 2021, when it entered judgment in favor of USIC. *See United States v. Stefan*, 784 F.2d 1093, 1100 (11th Cir. 1986) ("We conclude that the district court, by failing to make a ruling, implicitly overruled appellants' objection and denied their motion for a mistrial."). The 30-day clock to file an appeal therefore did not begin to run until September 2, 2021, and Nicor filed an appeal on September 29, 2021, safely within that period. Because Nicor's timely objections, which we construe as a motion for reconsideration, tolled the time to appeal the district court's March 2019 oral ruling and subsequent minute entry onto the civil docket, we have jurisdiction to consider the merits of this appeal.[6]

---

[6] USIC further argues that construing Nicor's objections as a motion for reconsideration raises an additional problem. According to USIC, Nicor failed to appeal the district court's March 2019 oral ruling on USIC's motion for summary judgment and instead addressed only the September 2021 Opinion and

### B. *The district court erred in dismissing Nicor's duty-to-in-demnify claims.*

Now that we have satisfied ourselves of jurisdiction in this case, we move on to the merits. On appeal, Nicor contends that the district court erred in concluding that Paragraph 9.1 of the Agreement, the Indemnification Provision, violated O.C.G.A. § 13-8-2(b)—Georgia's public-policy statute on unenforceable construction contracts. Nicor makes separate arguments as to USIC's (1) duty to defend and (2) duty to indemnify Nicor in connection with the Illinois suits. So we, too, divide our review in two parts—

---

Order that memorialized it. So USIC contends that we should review the district court's decision for abuse of discretion. We disagree. Federal Rule of Appellate Procedure 3 requires an appellant to file a notice of appeal, which "designate[s] the judgment—or the appealable order—from which the appeal is taken." FED. R. APP. P. 3(c)(1)(B). Although Nicor did not include the March 2019 ruling in its notice of appeal, we must "liberally construe the requirements of [Appellate] Rule 3." *Smith v. Barry*, 502 U.S. 244, 248 (1992). "[I]n this circuit, it is well settled that an appeal is not lost if a mistake is made in designating the judgment appealed from where it is clear that the overriding intent was effectively to appeal." *Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 738 n.1 (5th Cir.1980) (internal quotation marks and citation omitted). "This has resulted in the liberal allowance of appeals from orders not expressly designated in the notice of appeal, at least where the order that was not designated was entered prior to or contemporaneously with the order(s) properly designated in the notice of appeal." *McDougald v. Jenson*, 786 F.2d 1465, 1474 (11th Cir.1986). We see no reason not to liberally construe Nicor's notice of appeal to include the March 2019 oral ruling.

whether the Agreement violates O.C.G.A. § 13-8-2(b) with respect to each of the two duties.

We start with O.C.G.A. § 13-8-2(b). "As a general rule[,] a party may contract away liability to the other party for the consequences of his own negligence without contravening public policy, except when such agreement is prohibited by statute." *Lanier at McEver, L.P. v. Planners & Eng'rs Collaborative*, 663 S.E.2d 240, 242 (Ga. 2008) (cleaned up) (citation omitted). In this case, the parties agree that the public-policy statute guiding our interpretation of the Agreement is O.C.G.A. § 13-8-2(b). As applicable here, the 2011 version of O.C.G.A. § 13-8-2(b) provided, in relevant part:

> A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith, *purporting to require that one party to such contract or agreement shall indemnify, hold harmless, insure, or defend the other party to the contract or other named indemnitee*, including its, his, or her officers, agents, or employees, against liability or claims for damages, losses, or expenses, including attorney fees, arising out of bodily injury to persons, death, or damage to property *caused by or resulting from the sole negligence of the indemnitee*, or its, his, or her officers, agents, or employees, is against public policy and void and unenforceable.

O.C.G.A. § 13-8-2(b) (emphases added).

To "fall within the ambit of the statute, an indemnification provision must (1) relate in some way to a contract for 'construction, alteration, repair, or maintenance' of certain property and (2) promise to indemnify [or defend] a party for damages arising from that own party's sole negligence." *Kennedy Dev. Co. v. Camp*, 719 S.E.2d 442, 444 (Ga. 2011) (quoting O.C.G.A. § 13-8-2(b)). The first prong is self-explanatory. As to prong two, the statute voids as unenforceable all indemnity provisions purporting to indemnify an indemnitee's sole negligence. Of course, if the indemnitee knew it wouldn't have to pay for any of its negligent actions, the indemnitee might have less incentive to act carefully.

This Georgia public policy applies both to indemnity provisions explicitly claiming to indemnify or defend claims based on the indemnitee's sole negligence, *see Hartline–Thomas, Inc. v. Arthur Pew Constr. Co.,* 260 S.E.2d 744, 746 (Ga. Ct. App. 1979) (finding a contract clause that sought to indemnify contractor for its own negligence void as against public policy), and also indemnity provisions that use the phrases "any" or "all" claims, *see Frazer v. City of Albany*, 265 S.E.2d 581, 583 (Ga. 1980) (deeming "void as contrary to . . . public policy" an indemnity provision for "all claims . . . arising from . . . any work or thing done on the project" and another one for "any loss or damage to property, or any injury to or death of any person that may be occasioned by any cause whatsoever pertaining to the project"); *Lanier*, 663 S.E.2d at 241–42, 244 (voiding an indemnity provision that purported to hold

indemnitee harmless from "any and all claims, losses, costs, damages of any nature whatsoever" and "any and all liability or cause of action however alleged or arising, unless otherwise prohibited by law").

And in determining whether an indemnity provision falls within the ambit of O.C.G.A. § 13-8-2(b), our analysis is limited to "the language of the *contract or agreement itself,* and not other extraneous language . . . characterizing or making demands pursuant to it." *Milliken & Co. v. Ga. Power Co.*, 829 S.E.2d 111, 115–16 (Ga. 2019) (emphasis in original).

On appeal, Nicor does not challenge the district court's determination that the Agreement relates to a construction contract (prong 1). Nicor challenges only the district court's conclusion that both the duty to defend and the duty to indemnify kick in under the Agreement for losses that are based on Nicor's (as the indemnitee's) sole negligence. We start with the duty-to-defend clause.

1. The Duty-to-Defend Clause is Unenforceable.

First, we consult the text of the Agreement. Paragraph 9.1 requires USIC to defend Nicor "*against any and all* manner of losses, costs, expenses, damages, and fines or penalties, including, without limitation, reasonable attorneys' fees," in connection with or arising from the actual or alleged acts related to (1) services USIC performed or contracted to be performed under the Agreement or (2) Nicor's alleged liability, if liability is based on USIC's acts or omissions. Doc. No. 33-1, at 23 (emphasis added). Even if the

22                         Opinion of the Court                    21-13377

claims are based on Nicor's sole negligence, this language requires USIC to defend Nicor against "any and all" claims of loss or damages.

Georgia law is clear:  where an indemnity provision shifts all the liability to the indemnitor or requires the indemnitor to defend against all claims regardless of who is at fault, that indemnification provision cannot stand.[7]  *See Big Canoe Corp. v. Moore & Groover, Inc.*, 320 S.E.2d 564, 565–66 (Ga. Ct. App. 1984) (finding indemnity provision for "all claims, suits, damages, costs, losses and expenses arising from injury to any person, persons or property occurring on or about the said premises and relating to the performance of this Agreement" was unenforceable); *Nat'l Candy Wholesalers, Inc. v. Chipurnoi, Inc.*, 350 S.E.2d 303, 304, 306 (Ga. Ct. App. 1986) (finding indemnity provision for "any claim by any of the exhibitor's agents or employees for injury, loss or damage" was unenforceable).  And because Georgia courts have interpreted indemnification provisions covering "any and all losses" as implicitly indemnifying claims relating to the indemnitee's sole negligence, *see Lanier*, 663 S.E.2d at 243, we must follow their lead and conclude that USIC's duty to defend Nicor "against any and all manner of losses, [etc.]," violates O.C.G.A. § 13-8-2(b).  Therefore,

---

[7] Under the 2011 amendments to the statute, a promise to defend the indemnitee violates O.C.G.A. § 13-8-2(b), if the indemnitor's promise to defend covers claims relating to the indemnitee's sole negligence.

USIC's duty to defend Nicor is unenforceable as against public policy under O.C.G.A. § 13-8-2.[8]

Nicor responds with two counterarguments: first, that according to the recent Georgia Supreme Court case *Milliken & Company v. Georgia Power Company*, 829 S.E.2d 111 (2019), indemnification provisions that tie an indemnitor's obligations to its own actions do not violate O.C.G.A. § 13-8-2(b), and second, that the insurance exception to O.C.G.A. § 13-8-2(b) applies. We are not persuaded.

> i.    Milliken *does not apply here.*

Nicor contends that the duty-to-defend clause does not violate O.C.G.A. § 13-8-2(b) because recently, in *Milliken*, the Georgia Supreme Court determined that an indemnity clause that expressly conditioned indemnification on the acts or omissions of the *indemnitor* did not violate O.C.G.A. § 13-8-2(b).[9]  829 S.E.2d at 116–17.

---

[8] By its terms, Paragraph 9.1's Exculpatory Clause does not apply to USIC's duty to defend. The Exculpatory Clause specifically states,

> "[USIC] shall not be responsible to *indemnify or hold harmless* [Nicor] for losses or damages caused by the sole negligence of [USIC], its agents or employees."

(Emphasis added). The Clause, whether mistakenly or intentionally, excludes the duty to defend.

[9] USIC urges this panel to find that Nicor has forfeited this argument. We disagree. During the summary-judgment proceedings at the district court, Nicor argued that "O.C.G.A. § 13-8-2(b) [was] not applicable because the Indemnity Provision only required [USIC] to indemnify and defend Nicor under

Nicor says that describes the situation here. According to Nicor, the duty to defend in the Agreement is not unlimited but is instead premised on *USIC*'s acts or omissions in connection with or related to the Agreement. We disagree.

In *Milliken*, by contract, Georgia Power erected a power-transmission pole on Milliken's property, at Milliken's request. *Id.* at 112. Following a plane crash, the victims of the crash and their

---

two scenarios: (1) pursuant to subpart (a), where claims are asserted against Nicor arising out of services to be performed **by USIC**; and (2) pursuant to subpart (b), where claims are imputed to Nicor arising out of actions or failures to act **of USIC**." Doc No. 38-3, at 18 (emphasis in original). Thus, Nicor asserted, the Agreement did not contemplate "USIC defending or indemnifying Nicor for claims arising from the sole negligence of Nicor." *Id.* at 19. This is the same argument that Nicor advances on appeal; the only difference is that Nicor cites to *Milliken* as support for its argument. But we have explained that parties are free to raise new arguments on appeal; they just can't raise new issues. *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1304 n.3 (11th Cir. 2008) ("Although new claims or issues may not be raised, new arguments relating to preserved claims may be reviewed on appeal." (emphasis and citation omitted)). Here, Nicor has raised only a new argument.

Alternatively, USIC encourages us to hold Nicor to what USIC says Nicor's position was during the stay proceedings. USIC contends that Nicor unequivocally stated that "the duty to defend is not subject to any exception, only the duty to indemnify." Appellee Br. 33–34. But judicial estoppel is not warranted here because Nicor has not changed its position. During the stay proceedings, USIC argued that the duty to defend and the duty to indemnify were both subject to the Exculpatory Clause. Nicor responded that the duty to defend was not subject to the Exculpatory Clause. On appeal, Nicor still asserts that the Exculpatory Clause does not apply and further argues that it need not apply because the Indemnification Provision is triggered by only the acts or omissions of USIC.

families sued Milliken and Georgia Power for erecting the pole in the airport's protected space. *Id.* Milliken sought indemnification from Georgia Power. *Id.* The indemnity provision "require[d] Georgia Power to hold Milliken harmless from 'any damages to property or persons . . . which *result from* [*Georgia Power*] *Company's construction, operation or maintenance of its facilities* on said easement areas." *Id.* at 114 (second alteration and emphasis in original). And the provision appeared in an agreement that did not include a clause expressly excluding any damages arising from Milliken's sole negligence.

But that did not matter to the analysis. As the Georgia Supreme Court explained, "the plain terms" of the indemnification provision "indemnifie[d] Milliken for damages resulting from *Georgia Power*'s acts or omissions," not for damages resulting from Milliken's sole negligence. *Id.* So, the court said, the indemnification provision "d[id] not do that which [O.C.G.A § 13-8-2(b)] prohibits." *Id.*

*Milliken*'s facts are materially different from the facts here in two ways. First, unlike in *Milliken*—where the indemnification provision did not, by its terms, purport to make Georgia Power liable for anything Milliken did—the Indemnification Provision here expressly makes USIC liable for the acts and omissions of Nicor "to the extent that it shall be claimed that [Nicor is] liable for any reason because of any such act or omission of [USIC] or any subcontractor of [USIC]." And second, unlike in *Milliken*, the Indemnification Provision here contains an Exculpatory Clause,

which expressly states that USIC "shall not be responsible to *indemnify or hold harmless* [Nicor] for losses or damages caused by the sole negligence of [Nicor], its agents or employees." (Emphasis added).

As the Georgia Supreme Court has explained with respect to contract interpretation, the cardinal rule is to "ascertain the intention of the parties, and to this end the whole contract must be considered." *Denise v. Paxson*, 413 S.E.2d 433, 434 (Ga. 1992) (quoting *Hull v. Lewis*, 180 S.E. 599, 601 (Ga. 1935)). And when we look at the whole contract, we must presume that all provisions are "inserted with a purpose and are to be given some meaning." *Harper v. Phoenix Ins. Co.*, 126 S.E.2d 916, 918 (Ga. 1962). That means, we will not construe a contract, unless its terms necessarily require it, "to render useless and meaningless a particular provision in the contract." *Id*. So given that Paragraph 9.1 requires USIC to "defend, indemnify, and hold harmless," the language of the Exculpatory Clause—which does not refer to the duty to defend—necessarily means that USIC "shall be responsible to defend [Nicor] for losses or damages caused by the sole negligence of [Nicor], its agents or employees."

So, under Georgia's rules of contractual interpretation, USIC's duty to defend is unlimited and requires USIC to defend Nicor against all claims of damages even those based on Nicor's sole negligence. That construction violates Georgia public policy and is therefore unenforceable.

ii.    *The insurance exception to O.C.G.A. § 13-8-2(b) is inapplicable.*

In the alternative, Nicor argues that the duty-to-defend clause is enforceable because of the insurance exception to O.C.G.A. § 13-8-2(b).  Once again, we disagree.

Under Georgia law, under certain circumstances, when a contract includes an insurance clause that shifts risk of loss to an insurer, O.C.G.A. 13-8-2(b) does not apply.  *See, e.g., ESI, Inc. of Tenn. v. Westpoint Stevens, Inc.*, 562 S.E.2d 198, 199 (Ga. Ct. App. 2002); *Great Atl. & Pac. Tea Co. v. F.S. Assocs., L.P.*, 571 S.E.2d 527, 528 (Ga. Ct. App. 2002).  In particular, Georgia courts permit the enforcement of an indemnity clause when the contractual terms "unequivocally express the mutual intent" of the parties "to shift the risk of loss and to look solely to insurance coverage for loss or damages incurred by either party."  *May Dep't Store v. Ctr. Devs., Inc.,* 471 S.E.2d 194, 197 (Ga. 1996) (holding that clauses in leases and other contracts pursuant to which parties clearly express their mutual intent to shift the risk of loss to insurance do not violate O.C.G.A § 13-8-2(b)).

But a requirement that insurance be purchased is not "automatically a panacea for the dangers proscribed by the enactment of O.C.G.A § 13-8-2(b)."  *Federated Dep't Stores v. Superior Drywall & Acoustical, Inc.,* 592 S.E.2d 485, 488 (Ga. Ct. App. 2003).  "Instead, the type of insurance and the intent of the parties in mandating the purchase of insurance must play a part in the analysis."  *Id.*  That is so because, again, the contract containing the indemnity

clause and insurance requirement must "look solely to [the] insurance policy obtained in order to cover loss or damages incurred by *both* parties." *Id.*

For example, in *Federated Department Stores*, a woman tripped on a pole that the building owner had placed to help hide ongoing construction by a subcontractor inside a department store. *Id.* at 485–86. The woman sued the department store and the building owner, and the subcontractor was joined as a third-party defendant, based on a contract between the building owner and the subcontractor. *Id.* at 486. The contract contained an indemnification clause under which the subcontractor agreed to indemnify the building owner and the department store for all damages resulting from or arising out of the subcontractor's work. *Id.* at 487. Besides that, the contract required the subcontractor to obtain contractor's general liability insurance. *Id.*

The Georgia Court of Appeals concluded that the indemnification clause violated Georgia public policy as embodied in O.C.G.A. § 13-8-2(b). *Id.* And it rejected the department store and building owners' argument that the contract's insurance requirement freed them of that conclusion. *Id.* at 488. Viewing the contract as a whole, the court noted that nothing in the contract required the subcontractor to buy insurance that covered the acts or omissions of anyone other than the subcontractor. *Id.* In fact, the court continued, the subcontractor purchased the required type of policy—contractor's general liability insurance, which covered only the subcontractor's acts and omissions. *Id.* And as the

contract also required, the subcontractor provided the department store with a "certificate 'satisfactory to [the department store]' showing that [the subcontractor's] insurance was in force." *Id.* Because the subcontractor conducted the contracted work at the department store, the court concluded that the department store found the subcontractor's policy to be satisfactory. *Id.* Given these facts, and as relevant here, the court concluded that the department store and building owner could not "credibly assert[] that the intent of the parties was for such insurance to also cover the negligent acts of [the department store]." *Id.*

The Agreement here suffers from a similar problem. As in *Federated Department Stores*, nothing in the Agreement expresses the parties' intent to shift all the risk of *both* parties to the insurer or for the insurance to cover losses or damages caused by Nicor's sole negligence. The insurance policy USIC purchased covered Nicor as an additional insured only to the extent that the damages or losses were caused by USIC's acts or omissions.[10] The policy did not cover Nicor's acts and omissions. Because the policy was not intended to and did not cover both parties' acts or omissions, it cannot qualify under Georgia law for the insurance exception to O.C.G.A. § 13-8-2(b).

---

[10] Under the policy, Nicor was listed as an additional insured covered "only with respect to liability for [covered types of damage] caused in whole or in part, by: 1. [USIC] acts or omissions; or 2. The acts or omissions of those acting on [USIC's] behalf." Doc. No. 42-3 at 14.

In short, we conclude that the duty-to-defend requirement included in the Indemnification Provision violates O.C.G.A. § 13-8-2(b) and is unenforceable.

## 2. The duty-to-indemnify clause is enforceable.

Finally, Nicor challenges the district court's dismissal of its claims related to USIC's duty to indemnify Nicor. Nicor argues that the duty to indemnify that Paragraph 9.1 of the Agreement requires does not violate O.C.G.A. § 13-8-2(b) because the Exculpatory Clause explicitly states that USIC is relieved of any duty to indemnify or hold harmless Nicor for any losses or damages based on Nicor's sole negligence. We agree.

As we have explained, O.C.G.A. § 13-8-2(b) invalidates indemnity provisions that expressly or implicitly purport to indemnify claims relating to the indemnitee's sole negligence. *Lanier*, 663 S.E.2d at 241–44. But because of the Exculpatory Clause in Paragraph 9.1, the Agreement's Indemnification Provision does not purport to indemnify claims relating to Nicor's sole negligence. In other words, the parties agreed that the duty-to-indemnify clause does not apply to claims based solely on Nicor's negligence. Thus, the duty-to-indemnify clause does not violate O.C.G.A. § 13-8-2(b).[11]

---

[11] Nicor devoted a substantial portion of its briefing to arguing that USIC violated the district court's stay order by moving for summary judgment to dismiss all Nicor's claims, including those related to USIC's duty to indemnify. We disagree. District courts are vested with broad discretion to stay

21-13377                Opinion of the Court                31

But this conclusion does not end our discussion. USIC argues that the duty-to-indemnify clause cannot be severed from the duty-to-defend clause, as Paragraph 9.1 includes them both. So, USIC's reasoning goes, the two duties must stand or fall together, and because the duty to defend is unenforceable, the Indemnification Provision is unenforceable in its entirety.[12] We disagree.

---

proceedings and authority is incidental to their inherent powers to control their dockets. *See, e.g., Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008) ("[D]istrict courts have inherent, discretionary authority to issue stays in many circumstances."). And when the district court entered its stay order, it retained jurisdiction over that order and could modify or amend that order by dismissing all previously stayed claims. *See generally Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1522 (11th Cir. 1984) (explaining that a district court's decision to stay the federal proceedings is not a final decision because the lower courts retain jurisdiction for later disposition of the merits). USIC's motion for summary judgment seeking dismissal of all Nicor's claim did not violate the district court's stay order, as USIC filed its motion with the district court (which is the court that entered the stay order). And it was within the district court's discretion to choose to implicitly modify its stay order and address USIC's arguments for dismissal.

[12] USIC contends that Nicor has forfeited any argument as to the severability of the duty to defend and the duty to indemnify. Forfeiture "is the failure to make the timely assertion of a right." *United States v. Olano*, 507 U.S. 725, 733 (1993). "[A]ppellate courts generally will not consider an issue or theory that was not raised in the district court," and newly raised issues are considered forfeited. *Narey v. Dean*, 32 F.3d 1521, 1526 (11th Cir.1994) (quoting *FDIC v. Verex Assurance, Inc.*, 3 F.3d 391, 395 (11th Cir.1993)). Although Nicor did not raise its severability arguments during the summary-judgment

Under Georgia's rules of contractual interpretation, "[i]f a contract is severable, the part of the contract that is valid will not be invalidated by *a separate and distinct part* that is unenforceable." *Vegesina v. Allied Informatics, Inc.*, 572 S.E.2d 51, 53 (Ga. Ct. App. 2002) (emphasis added); *see also* O.C.G.A § 13-1-8(a). We determine whether a contract is severable based on the parties' intent. *Vegesina*, 572 S.E.2d at 53. "The parties' intent may be expressed directly, through a severability clause, or indirectly, as when the contract contains promises to do several things based upon multiple considerations." *Id.* (citation omitted).

As always, we start with the text of the Agreement. Paragraph 17 of the Agreement, the Severability Provision, states,

> **Severability**. If any provision of this Agreement is found by a proper authority to be unenforceable or invalid, such unenforceability or invalidity will not render this Agreement unenforceable or invalid as a whole; rather, this Agreement will be construed as if not containing the *particular invalid or unenforceable provision or portion thereof*, and the rights and obligations of the parties hereto will be construed and enforced accordingly. In such event, the parties will negotiate in good faith a replacement provision that would best accomplish the objectives of such

---

proceedings, likely because it thought that claims relating to the duty to indemnify were stayed, Nicor did raise these arguments in its Objections to USIC's Proposed Order. As a result, the severability issue is not forfeited because the issue was raised in the district court.

> unenforceable or invalid provision within the limits
> of applicable law or applicable court decisions.

Doc. No. 33-1, at 25–26 (emphasis added).  This provision evidences the parties' intent to sever unenforceable portions of the Agreement, while leaving the remainder intact.

Because there is an express severability provision, the next question we must answer is whether we can excise the duty to defend from the Indemnification Provision and still preserve the remainder of Paragraph 9.1.  *See AMB Prop., L.P. v. MTS, Inc.*, 551 S.E.2d 102, 104 (Ga. Ct. App. 2001) ("The question then becomes whether the court could excise the indefinite language and still preserve the language regarding the last year's base rent as the sole controlling language for determining the rent for the renewal term.").  We conclude we can and, in fact, we must.

For starters, the duty to defend and the duty to indemnify are distinct concepts, and Georgia courts have recognized that these duties represent independent contractual obligations.  *See ALEA London Ltd. v. Woodcock*, 649 S.E.2d 740, 746 & n.31 (Ga. Ct. App. 2007) (explaining that the duty to defend and the duty to pay are independent contractual obligations and citing approvingly to our holding in *Trizec Properties v. Biltmore Construction Co.*, 767 F.2d 810, 812 (11th Cir.1985), that the duty to defend is separate and apart from the duty to indemnify); *Nationwide Mut. Fire Ins. Co. v. Somers*, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003) ("An insurer's duty to defend and its duty to indemnify are separate and independent obligations." (citation omitted)); *City of Atlanta v. St.*

*Paul Fire & Marine Cas. Ins. Co.*, 498 S.E.2d 782, 785 (Ga. Ct. App. 1998) ("An insurer's duty to defend and its duty to indemnify are separate and independent obligations[;] . . . the existence of [the duty to defend] does not necessarily mean that [the insurer] was required to indemnify the City.").

Besides the fact that Georgia courts have recognized that these duties are distinct and separate, the duty to defend and the duty to indemnify require different obligations. For example, the duty to defend encompasses USIC's duty to appoint counsel and defend claims against Nicor. *See* Christopher K. Pfirrman & Michael DeMarco, *The duty to defend*, 2 SUCCESSFUL PARTNERING BETWEEN INSIDE AND OUTSIDE COUNSEL, § 25:8 (2021). On the other hand, the duty to indemnify relates to USIC's obligation to pay all covered claims and judgments against Nicor. *See* Steven Plitt et al., *Duty to defend distinguished from duty to pay on policy*, 14 COUCH ON INSURANCE, § 200:3 (2022).

Because these are distinct and separate obligations, if USIC's duty to defend is unenforceable, that does not affect USIC's duty to indemnify Nicor or the remainder of USIC's obligations under Paragraph 9.1. When distinct parts of an agreement are not necessary for other clauses in a provision to operate on their own, severability is possible. *See AMB Prop.*, 551 S.E.2d at 104.

And here, the text of the Severability Provision requires severance. As a reminder, it provides for severability of "the particular invalid or unenforceable provision *or portion thereof.*" Doc. No. 33-1, at 25 (emphasis added). Of course, the duty to defend is "a

portion" of the Indemnification Provision.  Thus, the Agreement contemplates that the duty to defend may be severed from the remainder of the Indemnification Provision.  So given that language and that the duty to defend is a distinct concept from the duty to indemnify, we conclude that the Severability Provision requires severance of the duty to defend from the rest of Paragraph 9.1 and the Agreement.

Unsatisfied with this conclusion, USIC argues that the duty to defend cannot be severed from the duty to indemnify because courts can strike only distinct provisions of a contract and not isolated language in a single provision.  USIC relies on *SunTrust Bank v. Bickerstaff*, 824 S.E.2d 717 (Ga. Ct. App. 2019) for support.  USIC's reliance on *SunTrust* is misplaced.

In *SunTrust*, the Georgia Court of Appeals held that the class-action waiver included in SunTrust's rules and regulations for deposit accounts was unconscionable and unenforceable.  *Id.* at 722.  Because the unenforceable class-action waiver clause was contained in the same section as the jury-trial waiver clause, the court also had to determine whether the jury-trial waiver clause could still be enforced.  The court concluded that the two clauses were not severable.  *Id.* at 722–23.  In reaching this conclusion, the court looked to the severability provision, which said that "[a] determination that any part of this agreement is invalid or unenforceable will not affect the remainder of this agreement."  *Id.* at 722 (alteration in original).  Based on this language, the court determined the

agreement did not authorize the court to excise a single sentence from an integrated provision. *Id.* at 722–23.

But that's not the language that the Agreement before us contains. Rather, as we have noted, the Agreement expressly contemplates that any "particular invalid or unenforceable provision *or portion thereof*," Doc. No. 33-1, at 25 (emphasis added), will be severed. The parties' intent controls our interpretation of the Agreement. And based on the Severability Provision, the parties intended to sever not only whole provisions that were deemed unenforceable but also invalid portions of provisions, such as the duty to defend. For this reason, we sever the duty to defend from Paragraph 9.1 and conclude that the Indemnity Provision is otherwise enforceable. Thus, USIC's duty to indemnify Nicor remains intact.

As a result, the district court erred in dismissing Nicor's claims related to USIC's duty to indemnify Nicor.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the grant of summary judgment on Nicor's duty-to-defend claims, as the clause is unenforceable pursuant to O.C.G.A. § 13-8-2(b), and we reverse the judgment on Nicor's claims related to USIC's duty to indemnify and remand for further proceedings.

**AFFIRMED IN PART AND REVERSED IN PART.**